Good morning, my name is Ben Lakeman. I represent the Pellin Henderson and I'd like to reserve about two to three minutes of rebuttal. All right. The time that's shown on the clock is your total time, so you've got to keep track of it. In this case, Mr. Henderson's plea was involuntary under this court's prior decision in Little John because Mr. Henderson was never advised of a direct consequence of his plea. And that was the fact that he would be permanently barred from receiving the transitional aid to needy families for the rest of his life. And his family members would be barred from receiving any aid that they would receive based on his portion of the aid. And he was never advised of that. This court in Little John held, I think definitively, that when a defendant is not advised, that renders the plea involuntary. Well, as you know, the law school-like quirk in this case is the language that we deal with. 862A applies only to a conviction which has as an element. Of course, you know this argument. You've seen it before. The possession or use or distribution of a controlled substance in conspiracy, it doesn't have as an element of that stuff. So what's your answer to that? I guess I have a two-part answer. Last night, the second Republican presidential debate took place. And there was a lot of what some people, pundits called later, waffling. At some point, it seemed like Wolf Blitzer couldn't get a yes or no answer out of anyone. But I think when it comes to this question, it's a binary proposition. It's one or the other. It's either yes, it does apply to conspiracy offenses, or no, it does not. I know this court is not going to waffle on that question. My response would be that it must apply because it's under Title 21 and 846, the conspiracy statute, says that basically all the disabilities that apply to someone convicted of a substantive offense would apply to a conspirator, someone who conspires to commit that offense. So all the other penalties, fines, all the other disabilities apply. Further, the Seventh Circuit in a case called Turner v. Glickman, which is in the briefs, they answered the question, what was Congress's intent in passing this benefit stripping statute, 862A? They said that Congress's only intent, the only stated one, was to deny welfare-type benefits to people convicted of drug-related offenses. I think that would cover conspirators. Finally, not finally, second to last, is the law of this circuit and every other circuit, I think, is the same on this one point, and that is that as a society, as a policy matter, we view conspiracy as actually worse than the underlying offense, and I think that all the circuits are in agreement with this, and that's because an overall agreement among more people is capable of causing more harm than just one substantive offense. So with that, against that background, it doesn't make a whole lot of sense to say, well, Congress must not have intended to punish people who've done the same offense, who get the same disability, who are probably more culpable and more dangerous. That doesn't fit their stated intent. Finally, if this court were to read into the statute that conspirators are, in fact, liable, I don't think that would be unusual. I think this court and other courts have done similar types of things in different circumstances, and the example that comes to mind is the case law regarding amendments to the guidelines. Sometimes the amendments are defined as clarifying amendments, and so someone might say, well, you know, once the guideline changes and then it's applied to someone's offense, they say, well, this guideline wasn't the same. It changed later. That's ex post facto, and this court many times said, no, even though the guideline didn't have this language, it was added later, that was really the policy that was always animating this guideline, and the amendment wasn't a substantive change. Rather, it was clarifying, and so I think this would sort of fall in the same category. The second law school trick to this issue is that apparently we're operating under plain error on our standard of review. I would say no, and then I'll explain why, and if not no, then I have some answers as to why I still think Mr. Henderson prevails under plain error, but the first response is no because every time you look at a rule, I think you've got to look at the policy considerations that are animating that rule, especially when a court tells you what those policy considerations are, and the case that the government's relying on is plain error cases. The Supreme Court's decision in Dominguez Benitez, that case expressly stated, the reason we're adopting this rule for plain error if you don't object is to encourage timely objections at the district court. That rationale is only going to apply when a defendant or his counsel knows that this is an issue, and here I would say, I don't know about his counsel, I wasn't trial counsel, but he never knew, and I would contrast this with Littlejohn, where when this court looked at Littlejohn, they said, well, you know, he knew about 862A because it was in the probation report. You know, I wrote Littlejohn. That strikes me as a difference without much of a distinction. The fact of the matter is we're dealing with a case where there was no objection, and I've gotten personally slapped down twice by the Supreme Court for extending opportunities on appeal that the Supreme Court said I shouldn't. So if we take this as plain error, let's assume we have to take it as plain error. You argue persuasively that it might be an error, but by having to construe so many things, why is it plain error? Well, I think it's plain, I guess, for two reasons. And the first is if you just take a look as a policy matter, this Court in a case called Roberts, as in my brief, said that in the context of Rule 11, courts need to proceed with caution. You need to be careful about taking admissions. And so as a policy matter, I don't think there would be anything unduly burdensome about when this might be an issue, I think it's clear that it's an issue,  and look, this might be an issue for you. Just to be on the safe side, I think you'd want to err on an abundance of caution. It has to be plain error. It just has to stick out like a sore thumb, almost, is what we're told. Adams was a case this Court decided that was, I believe, a plain error case. That was a case where the defendant was a wealthy man. It's in, I think, the party's briefs. And there was a, quote, unquote, mandatory fine available under the guidelines. And it's not, it wasn't, I mean, someone would argue, I think the government in that case argued, this isn't really clear. And the fact is, it's probably not even really mandatory. And the District Court would have had to make several inferential leaps. It would have had to say, well, this is probably going to apply. The defendant's a wealthy guy. Because of this wealthy guy and the way the guidelines would apply and that I have to advise him of the guidelines, I probably have to advise him of the possibility of this not really mandatory fine under the guidelines. But the Court had to think about all these things. It wasn't just something that is super obvious, but it's plain if the Court engages in this inferential process. Same thing here. Well, let's assume that this affects substantial rights. But why from this record is it clear that this makes any difference? Why should we entertain this here? Stage four of plain error. I mean, it appears on the record one might argue that, hey, this guy was pleading guilty. He didn't care about any of these collateral things. He was trapped. He pleaded guilty. And that's what's going to happen if we send it back. So why are we wasting everybody's time? I have a legal answer and a practical answer. My legal answer is just to show a reasonable probability that a defendant would go to trial. And legally, I would say look at this Court's prior decision in Monzon. That was the case where police broke in, there was a defendant sitting in his bedroom with a bunch of drugs and a handgun. And his statements were, well, I just had this handgun. And this Court in that case said, well, I think a lot of people, Monday morning quarterback, can say that's ridiculous. He had really no other stated purpose for having this gun. But this Court said, well, he could have went to trial on the 924C, even though he was dead to rights on everything else. That's my legal answer is if you look at what this Court has done before, it hasn't said, well, is he going to win the trial? And I think the Supreme Court in Dominguez-Bonitas, I think that's the case, it said it doesn't have to be a good decision or a wise decision. It just has to be, is there a possibility? That's the legal answer. The practical answer goes something like this. If you went to your doctor and your doctor said, you've got terminal cancer. You have three months to live. It's a done deal. You've got three months to live. But there is this experimental medication. And we really don't know what's going to happen. It might work. It might not work. But you're dead in three months. It would be a no-brainer to take that medication, a no-brainer, because there's no downside. Let me take that argument for just a second. What was the sentence your client got in this case? I think it's significant. He got 120 months. Judge Lorenz tried to give him five. Mr. Koh, I think, legally, correctly, objected to that. And the guidelines were actually somewhere in between. So the guidelines were less. Judge Lorenz wanted to give him even less than the guidelines, but it was the minimum mandatory. So I think he had nowhere to go but up. And I'll just say that it's easy to say later, say, well, he didn't have a chance. I've won a lot of tough cases. There was a case I tried before Judge King right here where the defendant has lied. He had a felony prior conviction. The drug organizer who hired him testified against him, and I walked that guy. And you say, well, if you just looked at the facts, you'd say overwhelming evidence. And this isn't because I'm the greatest attorney or the smartest attorney. You just never know. You just never know. Is he running the risk of getting a greater sentence by going to trial? I believe not. And I know Judge Lorenz, and I've looked at the transfer carefully. I think he's a sympathetic figure. His guidelines aren't much different. I think the only difference in the guidelines would be acceptance of responsibility. And sometimes people get that after trial depending on what they testify. Sometimes. He got that in this case. I think he did. Now he probably won't. I don't think that's true. I don't think you can say for sure. Well, you're running the risk. You're rolling the dice. You're exercising what I always tell my law clerks, the only thing that lawyers really have, which is judgment. I think it's like the experiment for medication. I don't think you're going to do it. He's not going to, you know, it's sort of that three months, the 120 months. I don't think he's going to get a whole lot more than that if he goes to trial. But if he wins, then he's not in custody. He doesn't have this felony conviction. He's not stripped of his benefits for the rest of his life. To me, it's just like the experiments of medication. It's a no-brainer. I don't think, the government's saying there's not much upside. I'm saying I don't think there's much downside. And I think the upside, you never know. You just never know. Counsel, you've used your time. We'll give you one minute for rebuttal. Thank you. Nice to see you, Mr. Koh. Nice to see you as well. I miss you in Las Vegas. Yes, ma'am. May it please the Court. Peter Kuff of the United States. I'll be very brief. Our position is 862A does not apply to this case because the defendant was convicted of conspiracy, as Judge Trott pointed out, and conspiracy does not have the required elements. You know, that really strikes me as absolute form without any substance at all. The practical effect of this conviction is that he's going to walk right into this fan of you're not going to be able to get your benefits because you got convicted of conspiracy involving drugs. I mean, you could construe that element in a couple of ways. Very technically, such as you look into an instruction that says, the elements of this crime are 1, 2, 3. Or you could use that word sort of in a larger sense. You know, well, what's the elemental aspect of this case all about? The way maybe people on the street would use an element of something rather than a technical element. I mean, isn't this, for all practical purposes, a drug case? I mean, everything you read in this case is nothing but conspiracy to drugs, drugs, drugs, drugs, drugs. So it's awfully hyper-technical, isn't it, to say, well, it doesn't have an element. I don't think it's hyper-technical because I think element among lawyers has a very precise legal meaning. It's an essential fact that has to be proven in order to establish a claim or, in this case, a criminal offense. And when it's used in a statute, I think it has to be viewed in that way as in its precise legal meaning. So can you guarantee us that this statute is never going to be used against this person? If this court rules and says it doesn't apply to conspiracy, yes, I think we can guarantee it. I can't say right now that – I don't know who enforces this, frankly, down the line. You know, the Social Security Administration or the food stamp program. I have no idea how – They have so much respect for the Ninth Circuit that they would. Hopefully they'll understand the laws out there. Hopefully they'll understand the laws out there, and that's the ruling that it does not apply to a defendant in this statute. So it's interesting. You're kind of arguing from the government's perspective that this guy should be able to get benefits that Congress probably didn't intend him to get. I'm frankly not sure what Congress intended him to get. You might be winning a small battle, and the people in charge of the war might look at you and say, what are you doing? You're making this guy available for benefits? It's entirely possible, sir, but all I can do is look at the statute that's in front of us, and the statute in front of us requires certain elements. And as I understand it, This is when they started walking across the hall 100 years ago to seek equity when law was committing dastardly wrongs against human beings. That's how the courts of equity started. The law, the evil law. Well, let's see what the chancellor has to say. Even setting aside the error issue, I think the error issue is somewhat academic, because as the court pointed out, there is also the problem of the standard of review here, which is plain error. And the plain prong requires that the error be so clear cut, so obvious, a competent district judge can avoid it without benefit of objection. Even if the court were to construe the statute somehow as applying to conspiracy, this has never been ruled on before. There's no case that holds this. In fact, this issue has never even been addressed as far as I can determine. And the statute, as I said, on its face, seems to indicate it does not apply to conspiracy. So for that reason, I don't believe you can meet the plain prong of plain error review. And for that reason, there is no plain error. There's really actually, in that sense, no reason to get to the error issue because the plain error is, the plain prong is so clear. So for those reasons, we do not believe 862A applies to this defendant. We don't believe there was a defect in this Rule 11 colloquy. And we'd ask the court to affirm his conviction and sentence. Could you address the Rule 32 issue? Yes. The district judge, I believe, complied with Rule 32. He stated on the record, there have been objections filed, many of those I'm not going to consider. And that's the problem. Many. Which ones? How do we know? And I would agree if he said many, and that was it. That was the end of his statement. But his statement was not just limited to many. He immediately followed that up with, the objection that I consider most pertinent is the sentencing entrapment argument, which he then went on to rule on. And in context with that statement, in addition to the fact that he then went on and gave a lengthy, a fairly lengthy oral ruling on the sentencing entrapment issue, in which he never referred to any of the disputed points in the objections. So you can infer he didn't pay any attention to the others? Not just infer. I think it's clear because, in fact, one of the objections, objection three, I believe, was to a sentence in the pre-sentence report in which the informant stated that Mr. Henderson told him he was actively selling methamphetamine and that Mr. Henderson showed him a pound of methamphetamine in the trunk of his vehicle before any of the transactions had ever occurred. Mr. Henderson objected to that statement as factually untrue. But if that statement is believed, it blows the sentencing entrapment argument right out of the water. I mean, it never even gets started at that point because there can't be a claim of sentencing entrapment. In this case, if the district judge was going to rely on any statement in the PSR that would destroy the sentencing entrapment argument, he would have pointed to that. But he never looked at that. He never mentioned it. Neither did any of the parties. Instead, he went on the undisputed record that was there, the recordings that were in there that nobody disputed, and Mr. Henderson's statements in those recordings, his actions during the transactions. So for that reason, I believe in context, yes, if he had made only the statement, many of these objections, we would have a problem. But in context with the statement that immediately followed that, the nature of his ruling, and the type of objections that were there, I think it's clear he complied with Rule 32. But we require pretty strict compliance with Rule 32. And as a district court judge, it's not difficult to do. All you do is list the objection, each objection, either overrule it or uphold the objection, or say, I'm not going to consider this, so I don't have to rule. It's not difficult to comply. And I believe he did comply. In this instance, what may have said, as sometimes happens during oral arguments or oral rulings, is he inserts a word that creates a little bit of a problem. In this case, many. But in context, it's pretty clear to me that he did not actually, in fact, rely on anything. Did Mr. Henderson's attorney jump up and say, wait a minute, judge, you haven't resolved all of these challenges? Is there anything like that? No. No, because I believe the district judge said, I'm not going to rule on the objection, so I don't think there would have been a reason for Mr. Henderson's attorney to stand up and say that. If there's anything else the court would like me to address, I will. Otherwise, I'll submit it at this point.  Thank you. One minute for rebuttal. Just briefly, Your Honors. There were several objections that went to not just whether Mr. Henderson was predisposed to self-meth, but whether he was engaged in a scope that was being alleged in this case. When the judge said, I think there isn't pretty strict compliance in the circuit. It's actually just strict compliance. And when a judge can either rule on those objections or say, I'm not taking any of those objections that I'm not ruling on into account. But I don't think you can take them and say many. A husband who is faithful to his wife many times is unfaithful. And I think when a judge says, well, many of these things I'm not taking into consideration, then he's left the bounds of strict compliance with Rule 30. Again, what's our standard of review, though? Well, I think that in this case, I think it would be de novo because there were objections on the record. And I think why that's important is, and I just want to really quickly dovetail to the other issue, which is the factual basis for the plea, the Benuelos issue, is one of the things the government said in a brief. It says, well, based on, I think, Vaughn and some other cases, this court can take a look at the entire record before a judgment to see if there really was a factual basis. Because I think they concede, I think at page 23 or so of their reply brief, that his factual basis during the plea trial could be deficient. But the difficulty of your argument is that if you had apprised or the defense attorney had apprised the district court judge that there was an issue, the district court judge would have had an opportunity to go back and rule on each objection. Well, he filed the objections. I don't know if he has to do more. Maybe he should have. I wasn't there. But the point I wanted to make about this was that I don't think the court can rely on the whole to say, well, we can rely on this full record to see if the plea was okay, if the court says, I'm only going to rule on many of the objections or some of them. I think in order for the government to take advantage of this Vaughn rule, I think the judge has to rule on every single one or say specifically, I don't, I'm not going to factor in all of these other ones. With that, I submit unless the court says otherwise. Ms. Lee, Your Honor, the government would have to prove the following elements. Who's Ms. Lee? That's Carol Lee. She's an assistant over at the district attorney's office. The following elements that beginning in about August 2001 up to and including October, there was an agreement between two and more persons to distribute methamphetamine. Sounds like an element. I think it's an element. I think he's got to admit to, for all the quantity under Banuelos, he's got to admit that he agreed with regard to all that quantity that was within the scope of his agreement. I think for all the sales, but in particular the third sale, I think it's just deficient. And that's the sale that triggers the 10-year minimum. All right. Thank you, counsel. Thank you to both counsel. The case just argued is submitted for decision by the court.
judges: Trott, Rawlinson, King